IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| DIANE BALES, | ) | 4:08CV3072 |
| Special Administrator of the Estate of | ) | |
| EDWARD FREDENBURG, Deceased, | ) | |
| | ) | |
| Plaintiff, | ) | **MEMORANDUM** |
| v. | ) | **AND ORDER** |
| | ) | |
| ARBOR MANOR, SSC FREMONT | ) | |
| OPERATING COMPANY, LLC, | ) | |
| d/b/a ARBOR MANOR, | ) | |
| | ) | |
| Defendant(s). | ) | |

On April 11, 2008, the defendant, SSC Fremont Operating Company, LLC, d/b/a Arbor Manor, removed this wrongful death action to federal court pursuant to 28 U.S.C. § 1441(a), on the basis of diversity jurisdiction, and also filed a "motion to dismiss the action or in the alternative to stay the action and compel arbitration" (filing 2).[1] On May 15, 2008, the court on its own motion ordered the defendant to show cause why the action should not be remanded to state court for lack of subject matter jurisdiction because the defendant is a limited liability company and the citizenship of its members was not disclosed. *See GMAC Commercial Credit LLC v. Dillard Dept. Stores, Inc.*, 357 F.3d 827, 828-29 (8th Cir. 2004) (limited liability company is not a "corporation" under 28 U.S.C. § 1332(c)(1)). The defendant has since shown, in a response filed on May 21, 2008, that its members are "1. Leonard Grunstein, resident of New Jersey; and 2. Murray Forman, resident of New York."

---

[1] Removal of the action to federal court was not a precondition for the filing of the defendant's motion based on the Federal Arbitration Act. The FAA "supplies not simply a procedural framework applicable in federal courts; it also calls for the application, in state as well as federal courts, of federal substantive law regarding arbitration." *Preston v. Ferrer*, 128 S.Ct. 978, 981 (2008).

(Filing 11 at CM/ECF p. 2.) Because the court's standardized form that was used for this response ("NEDC Corporate Disclosure Statement pursuant to Fed.R.Civ.P. 7.1") required the defendant to "identify each member of the entity and the member's state of citizenship" (*id.*), I will assume that these individuals are also citizens of New Jersey and New York.[2] Based on the pleadings, I will also assume, just as I did when entering the show cause order, that the plaintiff's decedent was a citizen of Nebraska.[3] It thus appears that the parties are "citizens of different States." 28 U.S.C. § 1332(a).

In order for diversity jurisdiction to exist, of course, "the matter in controversy [must] exceed[] the sum or value of $75,000, exclusive of interest and costs[.]." *Id.* The amount-in-controversy requirement is satisfied "when a fact finder could legally conclude, from the pleadings and the proof adduced to the court before trial, that the damages that the plaintiff suffered are greater than $75,000." *Capitol Indem. Corp. v. 1405 Associates, Inc.*, 340 F.3d 547, 549 (8th Cir. 2003) (quoting *Kopp v. Kopp*, 280 F.3d 883, 885 (8th Cir. 2002).[4] "The party invoking federal jurisdiction has the

---

[2] "It is diversity of citizenship and not diversity of residence which gives a federal court jurisdiction in a case where the requisite jurisdictional amount is in controversy." *Texaco-Cities Service Pipe Line Co. v. Aetna Cas. & Sur. Co.*, 283 F.2d 144, 145 (8th Cir. 1960). "Citizenship is determined by a person's physical presence in a state along with his intent to remain there indefinitely." *Altimore v. Mount Mercy College*, 420 F.3d 763, 768-69 (8th Cir. 2005).

[3] The plaintiff, Diane Bales, is a special administrator appointed by the County Court of Dodge County, Nebraska. For purposes of determining diversity, "the legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as the decedent[.]" 28 U.S.C. § 1332(c)(2). The plaintiff has not indicated that my assumption regarding the decedent's Nebraska citizenship is incorrect.

[4] Stated negatively, "the proponent of diversity jurisdiction must show 'that it does not appear to a legal certainty that the claim for relief is for less than the statutorily prescribed jurisdictional amount.'" *Kopp*, 280 F.3d at 885 (quoting 14B Charles Alan Wright, Arthur R. Miller, and Edward H. Cooper, *Federal Practice and Procedure* § 3702 (3d ed.1998)).

2

burden to prove the requisite amount by a preponderance of the evidence." *Advance America Servicing of Arkansas, Inc. v. McGinnis*, 526 F.3d 1170, 1173 (8th Cir. 2008). "This rule applies even in a removed case where the party invoking jurisdiction is the defendant." *James Neff Kramper Family Farm Partnership v. IBP, Inc.*, 393 F.3d 828, 831 (8th Cir. 2005). The determination of the value of the matter in controversy under 28 U.S.C. § 1332(a) is a federal question, although the federal courts must look to state law to determine the nature and extent of the right to be enforced in a diversity case. *See Hedberg v. State Farm Mut. Auto. Ins. Co.*, 350 F.2d 924, 928 (8th Cir. 1965); *Horton v. Liberty Mut. Ins. Co.*, 367 U.S. 348, 352-53 (1961).

The defendant has presented no evidence on this jurisdictional issue, but merely alleges in the notice of removal that "Plaintiff's Complaint establishes that the matter in controversy exceeds the sum of $75,000.00, exclusive of interest and costs, insofar as it seeks damages for negligence resulting in the wrongful death of Edward Fredenburg and loss of the comfort of his society and companionship." (Filing 1, at CM/ECF p. 2, ¶ 5.) In accordance with Nebraska pleading practice, no amount of damages is specified in the complaint.[5] The complaint also does not state how old Mr. Fredenburg was at the time of his death, but it is alleged that he resided at the defendant's nursing home for less than 6 months before dying. Mr. Fredenburg's daughter, the plaintiff, is alleged to be his sole heir. No additional damage claims are asserted on behalf of the decedent's estate. *See Reiser v. Coburn*, 587 N.W.2d 336, 339 (Neb. 1998) ("A separate action on behalf of the decedent's estate for conscious pain and suffering experienced before death, medical expenses, and funeral and burial expenses may be joined as a separate cause of action in an action for wrongful death."); *Brandon v. County of Richardson*, 566 N.W.2d 776, 780 (Neb. 1997) ("[A] decedent's estate may recover as an element of damages for decedent's conscious

---

[5] "If the recovery of money be demanded, the amount of special damages shall be stated but the amount of general damages shall not be stated[.]" Rule 8(a) of the Nebraska Rules of Pleading.

3

pain, suffering, and mental anguish resulting from the apprehension and fear of impending death."). Nebraska law does not permit an award of punitive damages. See *State ex rel. Cherry v. Burns*, 602 N.W.2d 477, 484 (Neb. 1999) ("[O]rdinarily, with respect to state causes of action, punitive damages contravene Neb. Const. art. 7, § 5, and are not allowed.").

"A plaintiff in a wrongful death case can recover damages only for loss of the deceased's society, comfort, and companionship which are shown by the evidence to have a pecuniary value." *Reiser*, 587 N.W.2d at 340. However, the Nebraska Supreme Court has recognized that in this context, "the word 'pecuniary' is not to be construed in a strict sense, that it is difficult to determine its exact measure, and that the task of determining such must be left to the good judgment and ordinary common sense of the jurors." *Id.* (quoting *Maloney v. Kaminski*, 368 N.W.2d 447, 458 (Neb. 1985). "The law does not provide any positive, definite mathematical formula or legal rule by which a jury shall fix the amount of pecuniary loss; it must be determined upon a consideration of the circumstances of each case." *Id.* "Because it is impossible to generalize the extent to which persons enjoy each other's companionship and society, the value of such highly personal relationships must be decided on a case-by-case basis." *Brandon ex rel. Estate of Brandon v. County of Richardson*, 624 N.W.2d 604, 625 (Neb. 2001). "[D]amages on account of mental suffering or bereavement or as solace to the next of kin on account of the death are not recoverable." *Poppe v. Siefker*, 735 N.W.2d 784, 792 (Neb. 2007).

Based on the limited information that is contained in the complaint, it does not appear to a legal certainty that the plaintiff's claim for loss of her father's society, comfort, and companionship is worth only $75,000 or less. In other words, without knowing all of the relevant circumstances, I find that a reasonable jury could award the plaintiff damages in excess of $75,000. In making this determination, I am guided by the Nebraska Supreme Courts' decision in *Genthon v. Kratville*, 701 N.W.2d 334, 348-49 (Neb. 2005), where a jury verdict awarding a special administrator $275,000

4

in damages for wrongful death due to a nursing home's medical negligence was found to be supported by evidence and not excessive.[6] I am also influenced by the fact that the plaintiff did not move to remand the case to state court. *See Bosinger v. Phillips Plastics Corp.*, 57 F.Supp.2d 986, 989 (S.D.Cal. 1999) ("[W]hile it is for the Court to decide its own jurisdiction, the Court finds in Plaintiff's silence implicit support for Defendant's allegation as to the amount in controversy."). I therefore conclude that subject matter jurisdiction exists, such that I can act on the defendant's motion.

The defendant's motion is captioned as a "motion to dismiss the action or in the alternative to stay the action and compel arbitration," but the body of the motion only requests that the plaintiff's action be dismissed "pursuant to 9 U.S.C. § 2,[7] et seq. as interpreted by *Kalinski v. Robert W. Baird & Co., Inc.*, 184 F.Supp.2d 944 (D.Neb. 2002) (citing *Baker v. Golf U.S.A., Inc.*, 154 F.3d 788 (8th Cir. 1998)[.]" (Filing 2.) In its supporting brief, however, the defendant argues as an alternative to dismissal that the action should be stayed pursuant to 9 U.S.C. § 3,[8] and arbitration compelled

---

[6] *Genthon* actually involved a legal malpractice action that was brought after the wrongful death action was dismissed for procedural reasons.

[7] Section 2 of the Federal Arbitration Act ("FAA") provides:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

[8] Section 3 of the FAA provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement

5

(pursuant to 9 U.S.C. § 4,[9] presumably). I will liberally construe the defendant's motion, which references the contemporaneously filed "Brief in Support of the Motion to Dismiss the Action or in the Alternative to Stay the Action and Compel Arbitration", to include the alternative request for relief.[10] *See Andreas v. Volkswagen of America, Inc.*, 336 F.3d 789, 793 (8th Cir. 2003) ("The particularity

---

in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration."

[9] Section 4 of the FAA provides, in part:

A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement. Five days' notice in writing of such application shall be served upon the party in default. Service thereof shall be made in the manner provided by the Federal Rules of Civil Procedure. The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed. If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof. . . .

[10] A motion must "state with particularity the grounds for seeking the order" and "state the relief sought." Fed.R.Civ.P. 7(b)(1)(B)&(C).

6

requirement [of Rule 7] should not be applied in an overly technical fashion when the purpose behind the rule is not jeopardized.").

In *Kalinski*, which is also referenced in the defendant's motion, I decided to dismiss an action, without prejudice, rather than to compel arbitration and stay the action. In doing so, I stated:

> Because all of the plaintiff's claims are subject to arbitration, I have the discretion to dismiss this matter rather than to stay it and compel arbitration. *See, e.g., Barker v. Golf U.S.A., Inc.*, 154 F.3d 788, 793 (8th Cir.1998) (affirming dismissal because of arbitration clause), *cert. denied*, 525 U.S. 1068, 119 S.Ct. 796, 142 L.Ed.2d 659 (1999); *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir.1992) ("The weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration.") (collecting cases). The plaintiff has presented no reasons why dismissal would be inappropriate as contrasted with the alternative remedy, and, in this case, I can detect none.

*Kalinski*, 184 F.Supp.2d at 946-47. I also indicated that dismissal was preferable to a stay because "when a case is stayed, there are significant administrative burdens imposed upon the court caused by the need to monitor events taking place in another forum. The court has a duty to insure the expeditious resolution of stayed cases just like it has a similar duty in active cases. Since arbitration may completely resolve the entire case, thus making monitoring wholly unnecessary, such a burden should be avoided if otherwise appropriate." *Id.* at 947 n. 3.

While the defendant does not appear to be requesting that the plaintiff's action be dismissed *with prejudice* for failure to state a claim, I will deny the defendant's motion to the extent that it might be construed as a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6). Because the arbitration agreement is not referenced in the plaintiff's complaint, which involves an action based on tort rather than contract principles, the defendant's motion necessarily depends upon "matters

7

outside the pleadings." *See* Fed.R.Civ.P. 12(d). The defendant has filed evidence for purposes of establishing the existence of the arbitration agreement, but this evidence cannot be considered by the court in relation to a Rule 12(b)(6) motion to dismiss without first converting the motion into one for summary judgment and affording the plaintiff a reasonable opportunity to respond. *See Blair v. Wills*, 420 F.3d 823, 827 (8th Cir. 2005) (stating that notice to the nonmoving party is typically required when the court treats a Rule 12(b)(6) motion to dismiss as a Rule 56 motion for summary judgment). However, the court has wide discretion in determining whether matters outside the pleadings will be considered. *See Skyberg v. United Food and Commercial Workers Int'l Union, AFL-CIO*, 5 F.3d 297, 302 n. 2 (8th Cir. 1993). Because the defendant is requesting alternative relief, I decline to consider the evidence in relation to any Rule 12(b)(6) motion that may be at issue in this case.[11] The defendant's evidence will only be considered for purposes of determining whether to compel arbitration and to stay the plaintiff's action pursuant to 9 U.S.C. §§ 3, 4, or, alternatively, to dismiss the action without prejudice.

As evidence in support of the motion, the defendant has filed an authenticated copy of an arbitration agreement and the affidavit of the defendant's director of admissions, who describes the execution of the agreement by the plaintiff's decedent on January 16, 2007, upon his becoming a resident of Arbor Manor, a nursing home located in Fremont, Nebraska. The affidavit also attempts to establish that the arbitration agreement is enforceable under the Federal Arbitration Act because the

---

[11] A district court has authority to consider matters outside the pleadings when subject matter jurisdiction is challenged under Rule 12(b)(1), *Harris v. P.A.M. Transport, Inc.*, 339 F.3d 635, 638 n. 4 (8th Cir. 2003), but the mere existence of an arbitration agreement does not divest the court of subject matter jurisdiction. *See Frank v. American General Finance, Inc.*, 23 F.Supp.2d 1346, 1349 (S.D.Ala. 1998). *But see Richland Grain, Inc. v. White Commercial Corp.*, No. 8:03CV182, 2003 WL 22722419, *1 (D.Neb. Nov. 19, 2003) ("Because all of the claims made by the plaintiff are subject to arbitration, I have the discretion to dismiss this matter for lack of subject matter jurisdiction rather than to stay it and compel arbitration.").

underlying contract for nursing home services "evidenc[es] a transaction involving commerce." 9 U.S.C. § 2. The agreement reads, in part, as follows:

> The following is an agreement to arbitrate any dispute that might arise between  Ed Fredenburg  ("Resident") and/or _____ ("Legal Representative") and Arbor Manor (Facility), ("Facility" includes the particular facility where the Resident resides, its parents, affiliates, and subsidiary companies, owners, officers, directors, medical directors, employees, successors, assigns, agents, attorney and insurers). The parties expressly agree and voluntarily enter into this binding Arbitration Agreement (the "Agreement"). The Resident and the Facility have entered into an Admission Agreement and acknowledge that such Admission Agreement constitutes the foundation of the relationship between them and all duties and obligations arising between them. The Resident and the Facility further acknowledge that said Admission Agreement evidences a transaction involving interstate commerce. The Resident and the Facility understand that the Admission Agreement involves interstate commerce because the Facility is engaged in interstate commerce by activity that includes, but is not limited to, execution of interstate contracts relating to services, management and interstate marketing, acceptance of federal funds as a significant source of income, regulation by federal statutes and the use of goods, services, employees and management personnel in multiple states. This Agreement shall not apply to any dispute where the amount in controversy is less than two hundred thousand ($200,000.00) dollars.
>
> In consideration of this binding Agreement, the Facility and the Resident acknowledge that they are agreeing to a mutual arbitration, regardless of which party is making a claim; that the Facility agrees to pay the fees of the arbitrators and up to $5,000.00 of reasonable and appropriate attorney's fees and costs for the Resident in any claims against the Facility; that the Resident shall have the right to choose the location of any arbitration under this Agreement; that the parties will mutually benefit from the speedy and efficient resolution of disputes which arbitration is expected to provide; and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by all parties hereto. Intending to be legally bound, the

parties expressly agree that this Agreement will be governed by the Federal Arbitration Act, 9 U.S.C. § 1-16 ("FAA").  It is the express intent of the parties to have a binding arbitration agreement and the parties further agree as follows:

The parties agree that they shall submit to binding arbitration all disputes against each other and their representatives, affiliates, governing bodies, agents and employees arising out of or in any way related or connected to the Admission Agreement and all matters related thereto including matters involving the Resident's stay and care provided at the Facility, including but not limited to any disputes concerning alleged personal injury to the Resident caused by improper or inadequate care including allegations of medical malpractice; any disputes concerning whether any statutory provisions relating to the Resident's rights under Nebraska law were violated; any disputes relating to the payment or non-payment for the Resident's care and stay at the Facility; and any other dispute under state or Federal law based on contract, tort, statute (including any deceptive trade practices and consumer protection statutes), warranty or any alleged breach, default, negligence, wantonness, fraud, misrepresentation or suppression of fact or inducement.

An arbitration hearing regarding any disputes shall be held before a board of three arbitrators (selected from a nationally recognized arbitration association), one chosen by each side in the dispute with the third to be chosen by the two arbitrators previously chosen.  Such hearing and all other proceedings relative to the arbitration of the claim(s) shall be conducted in accordance with the applicable rules of procedure governing the selected arbitrators that do not conflict with the FAA.  In rendering a decision on the merits of the claim(s), the arbitrators shall apply the substantive law of the State of Nebraska.

. . . In the event that any party to this Agreement refuses to go forward with arbitration, the party compelling arbitration reserves the right to proceed with arbitration, and the Resident and the Facility specifically acknowledge the applicability of the FAA allowing the aggrieved party to petition an appropriate court for enforcement of the arbitration agreement and to obtain a stay of any other proceeding.

> Submission of any dispute under this Agreement to arbitration may only be avoided as specifically allowed by the FAA. . . .
>
> It is the intention of the Facility and the Resident that this Agreement shall inure to the benefit of and bind the Facility, its parents, affiliates, and subsidiary companies, owners, officers, representatives, directors, medical directors, employees, successors, assigns, agents, attorneys and insurers; the Resident, his/her successors, assigns, agents, attorneys, insurers, heirs, trustees, and representatives, including the personal representative or executor of his or her estate; and the Legal Representative, his/her successors, assigns, agents, attorneys, insurers, heirs, trustees, and representatives or executor of his or her estate.

(Filing 3-2, Attach. 1, at CM/ECF pp. 1-2.)

"A federal court must compel arbitration if (1) there is a contract involving commerce; (2) there is a controversy arising out of that contract; (3) the contract calls for arbitration; and (4) there has been a refusal to comply with the arbitration provision." *Ferry-Morse Seed Co. v. Food Corn, Inc.*, 729 F.2d 589, 592 n. 6 (8th Cir. 1984) (citing 9 U.S.C. §§ 2, 3). For the reasons discussed below, I find that each of these conditions is satisfied in this case.

The Supreme Court has "interpreted the term 'involving commerce' in the FAA as the functional equivalent of the more familiar term 'affecting commerce'—words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power." *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) (citing *Allied-Bruce Terminix Cos.*, 513 U.S. 265, 273-74 (1995)). Thus, "the FAA encompasses a wider range of transactions than those actually 'in commerce'—that is, 'within the flow of interstate commerce[.]'" *Id.* The arbitration agreement in this case specifies that Arbor Manor's "Admission Agreement evidences a transaction involving interstate commerce" because, among other reasons, the nursing home engages in "execution of interstate contracts relating to services, management and interstate marketing, acceptance of federal funds as a significant source of income,

11

regulation by federal statutes and the use of goods, services, employees and management personnel in multiple states." (Filing 3-2, Attach 1, at CM/ECF p. 1.) The defendant's director of admissions states in her affidavit that a majority of the nursing home's supplies and equipment are purchased from out-of-state vendors, and that it has several residents who are from out-of-state. (Filing 3-3, Attach. 2, at CM/ECF p. 2, ¶¶ 6-9.)  It is clear that the Federal Arbitration Act applies in this situation. *See, e.g., Rainbow Health Care Center, Inc. v. Crutcher*, No. 07-CV-194-JHP, 2008 WL 268321, *5 (N.D.Okla. Jan. 29, 2008) (FAA applied to nursing home contract where one-fourth of nursing home's expenditures for goods and services could be traced to interstate transactions and nursing home accepted resident admissions from out-of-state).

There is also no question that the present controversy arises out of the nursing home contract. Broadly worded arbitration clauses are generally construed to cover tort suits arising from the same set of operative facts covered by a contract between the parties to the agreement. *MedCam, Inc. v. MCNC*, 414 F.3d 972, 974 (8th Cir. 2005); *CD Partners v. Grizzle*, 424 F.3d 795, 800 (8th Cir. 2005). The arbitration agreement in this case broadly applies to "all matters . . . involving the Resident's stay and care provided at the Facility, including but not limited to any disputes concerning alleged personal injury to the Resident caused by improper or inadequate care including allegations of medical malpractice; any disputes concerning whether any statutory provisions relating to the Resident's rights under Nebraska law were violated; . . . and any other dispute under state or Federal law based on contract, tort, statute . . ., negligence, [or] wantonness[.]" (Filing 3-2, Attach. 1, at CM/ECF p. 2.) The plaintiff alleges that the defendant's employees "failed to exercise reasonable and ordinary care, skill and diligence, and departed from the generally accepted and recognized standard of care for the community in the care, assistance and treatment of Edward Fredenburg, and were therefore negligent in performing their duties" because they failed to "assist [Mr. Fredenburg] with activities of daily living," to "provide . . . services as ordered by a medical practitioner," to "provide . . . a clean,

12

safe, and/or sanitary environment," to "assist . . . with a bowel and/or bladder program," to "ensure . . . medications were available on a regular basis," to "administer medications as ordered by a medical practitioner," to "notify [his] physician of [his] change of condition," and "to ensure [that he was] treated with dignity," all of which negligence is alleged to be "the direct and proximate cause of the wrongful death of Edward Fredenburg on July 3, 2007." (Filing 1 at CM/ECF pp. 6, 7, ¶¶ VII, IX.) The plaintiff's wrongful death claim is based on the defendant's alleged breach of its contract-based duty, "[f]ollowing Edward's admission to the Defendant's nursing home on January 16, 2007, . . . [to] reasonably and prudently observe, assess, record, advise and monitor his medical condition, and provide him with proper care." (*Id.* at CM/ECF p. 6, ¶ V.)

A more difficult question is whether the arbitration agreement executed by Mr. Fredenburg is enforceable against a special administrator of his estate suing on behalf of his next of kin.[12] I conclude that it is. The agreement purports to bind "the Resident, his/her successors, assigns, agents, attorneys, insurers, heirs, trustees, and representatives, including the personal representative or executor of his or her estate; and the Legal Representative, his/her successors, assigns, agents, attorneys, insurers, heirs, trustees, and representatives or executor of his or her estate." (Filing 3-2, Attach. 1, at CM/ECF p. 2.) Under Nebraska law, however, "the cause of action created by the Lord Campbell Act [*i.e.*, the wrongful death statute] was not for the decedent but, rather, for the exclusive benefit of the widow or widower and next of kin of the decedent." *Rhein v. Caterpillar Tractor Co.*, 314 N.W.2d 19, 22 (1982) (citing Neb. Rev. Stat. § 30-810). "[A] recovery under the wrongful death statute is not for the benefit of the estate of the decedent, but is for the benefit of the heirs of the decedent in the amount of damages sustained by them, and the proceeds of the recovery are not assets of the decedent's estate." *Hickman v. Southwest Dairy*

---

[12] The plaintiff has not responded to the defendant's motion, and thus has not raised any issue concerning Mr. Fredenburg's execution of the arbitration agreement nor otherwise claimed that the agreement is void or unenforceable.

13

*Suppliers, Inc.*, 230 N.W.2d 99, 104-05 (Neb. 1975) (citing *Moore v. Omaha Warehouse Co.*, 182 N.W. 597 (1921)).

In an early decision, *Chicago, B. & Q.R. Co. v. Wymore*, 58 N.W. 1120 (Neb. 1894), the Nebraska Supreme Court[13] considered whether a wrongful death action was barred by an agreement that the deceased had executed when joining a relief association for railroad employees. The agreement provided that "the acceptance of benefits from the [association's] relief fund shall operate as a release and satisfaction of all claims for damages against [the railroad], arising from such injury or death, which could be made by [the employee] or [his] legal representatives." After the deceased's widow accepted the death benefit, she filed a wrongful death action as the administrix of the deceased's estate. The Nebraska Supreme Court held that while the widow could not recover anything further, because she had accepted the benefit in her individual capacity and signed a separate release, the wrongful death action could still proceed for the benefit of the deceased's children. The Court stated:

> We are quite satisfied that the deceased did not, and could not, by such a contract, release the company from liability under chapter 21 of the Compiled Statutes, being the act in this state corresponding to that known as "Lord Campbell's Act." By that act it is provided that whenever the death of a person shall be caused by the wrongful act, negligence, or default, and the act, negligence, or default is such as would, if death had not ensued, have entitled the party injured to maintain an action, then the person who would so be liable shall be liable to an action, notwithstanding the death. We are aware that many cases hold that under such an act, if the party injured had compromised and accepted satisfaction previous to his death, there can be no further action. But this contract was not a compromise or satisfaction. The

---

[13] The *Wymore* opinion was authored by a single Nebraska Supreme Court Commissioner, Frank Irvine, but it is good precedent. *See In re Supreme Court Commissioners*, 56 N.W. 298, 298-99 (Neb. 1893) (explaining that commissioners' opinions are approved by the court before filing, and, once filed, "stand as the judgment of the court.").

14

> deceased did not waive his right of action, but only provided in the contract that the receipt by his beneficiary of the death benefit should constitute a release; and the constitution of the association, in evidence, shows, in many places, that it was contemplated that the member might elect to maintain his action, or accept the benefit. . . . If the facts exist as claimed by the plaintiff, the circumstances were such that Wymore might have maintained an action, had he lived. He had not waived his right of action. He undertook to contract that the beneficiary named in the contract might waive it by accepting the benefit, but this action is not for the benefit of his estate, but for that of his widow and next of kin; and the measure of damages is not what he might have recovered, had he lived, but their pecuniary loss by reason of his death. Whether or not he could, by a compromise after the accident, before his death, deprive them of their right of action, he could not contract away their right before the injury, and without their consent. Nor could he contract that the widow might, after his death, deprive the next of kin of their remedy.

*Id.*, 58 N.W. at 1123-24 (citation omitted).

*Wymore* is distinguishable from the present case because Mr. Fredenburg did, in fact, agree to waive his right to bring a court action against the defendant.[14] An action can be brought under the Nebraska wrongful death statute only when "the death of a person . . . is caused by the wrongful act, neglect, or default of any person . . . such as would, if death had not ensued, have entitled the person injured to maintain an action and recover damages in respect thereof[.]" Neb. Rev. Stat. § 30-809 (West, WESTLAW through 2007 legislative session). Thus, for example, if a personal injury cause of action is settled or reduced to judgment prior to the injured

---

[14] Were it not for the Federal Arbitration Act, this agreement would be void as against Nebraska public policy. *See* Neb. Rev. Stat. § 25-2602.01(b)&(f)(1) (providing that a claim arising out of personal injury based on tort is not subject to an agreement to arbitrate controversies arising in the future). The FAA preempts all state laws that reflect a policy disfavoring arbitration and which are designed specifically to limit arbitration. *Faber v. Menard, Inc.*, 367 F.3d 1048, 1052 (8th Cir. 2004).

15

person's death, no wrongful death action can later be brought based on that same injury. See *Rhein*, 314 N.W.2d at 24; *Hindmarsh v. Sulpho Saline Bath Co.*, 187 N.W. 806, 808 (Neb. 1922).

Because of the derivative nature of a wrongful death action in Nebraska, I conclude that the arbitration agreement must be enforced against the plaintiff to the same extent that it would have been enforced against the plaintiff's decedent had he survived. *See, e.g., Covenant Health Rehab of Picayune, L.P. v. Brown*, 949 So.2d 732, 738 (Miss. 2007) (arbitration clause in nursing home admission agreement applied to wrongful death action because arbitration agreements are not invalidated by the death of the signatory and, if provided in the agreement, are binding on successors and heirs); *Wilkerson ex rel. Estate of Wilkerson v. Nelson*, 395 F.Supp.2d 281, 288-89 (M.D.N.C. 2005) (arbitration agreement with nursing home explicitly covered estate claims and, under North Carolina law, the estate's potential for recovery in a wrongful death action is legally derivative of the deceased's own ability to recover). *Cf. Peters v. Columbus Steel Castings Co.*, 873 N.E.2d 1258, 1262 (Ohio 2007) (because Ohio wrongful death statute follows minority position that wrongful death claims are not derivative, a decedent cannot bind his or her beneficiaries to arbitrate such claims). *But see Washburn v. Beverly Enterprises-Georgia, Inc.*, No. CV 106 051, 2006 WL 3404804, *4-5 (S.D.Ga. Nov. 14, 2006) (nursing home arbitration agreement not enforceable against wrongful death beneficiary because even though substantive defenses which would preclude liability to the decedent are also good against a wrongful death beneficiary under Georgia law, the same is not true of procedural defenses, as demonstrated by the fact that the wrongful death statute has its own stature of limitations; for example, a medical malpractice claim brought on behalf of the decedent or her estate may be time-barred, while the wrongful death beneficiary's claim remains viable).[15]

---

[15] Contrary to the example used in *Washburn*, the Nebraska Supreme Court has held that a special statute of limitations for malpractice actions brought against qualified health care providers, Neb. Rev. Stat. § 44-2828, applies to wrongful death

16

Although not discussed by the defendant, the arbitration agreement contains an unusual provision that it "shall not apply to any dispute where the amount in controversy is less than two hundred thousand ($200,000,00) dollars." (Filing 3-2, Attach. 1, at CM/ECF p.1.) Despite a lack of evidence on this point, I find, for the same reasons stated with respect to the jurisdictional question, that the plaintiff's wrongful death claim could possibly result in an award of damages of $200,000 or more. "Generally, there is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute*.*" *Lyster v. Ryan's Family Steak Houses, Inc.*, 239 F.3d 943, 945 (8th Cir. 2001) (internal quotations and citations omitted). "The scope of an arbitration agreement is given a liberal interpretation, with any doubts resolved in favor of arbitration." *MedCam*, 414 F.3d at 975.

The final condition for the issuance of an order compelling arbitration, namely, that there has been a refusal to comply with the arbitration provision, is also satisfied in this case because the plaintiff filed suit in state court. The defendant, however, has indicated that it would prefer the court to dismiss the plaintiff's action rather than to compel arbitration and stay the action. The plaintiff has not indicated a contrary preference. Accordingly, I will enter an order of dismissal without prejudice to arbitration and subsequent judicial relief if appropriate.[16]

---

claims brought against such providers, rather than the statute of limitations that is generally applicable to wrongful death actions, Neb. Rev. Stat. § 30-810. *See Alegent Health Bergan Mercy Medical Center v. Haworth*, 615 N.W.2d 460, 466-67 (Neb. 2000) (wrongful death action time-barred because not filed within 2 years after last date of medical treatment, as opposed to within 2 years after date of death).

[16] There is a split of authority on the issue of whether the dismissal of an action is permitted by the Federal Arbitration Act. *See Lloyd v. Hovensa, LLC*, 369 F.3d 263, 268-69 (3rd Cir. 2004) ("Courts of Appeals have reached different resolutions of the issue of whether a District Court has discretion to deny a motion for a stay pending arbitration and dismiss a complaint where it finds all claims before it to be

IT IS ORDERED that the defendant's motion to dismiss or, in the alternative, to stay the action and to compel arbitration (filing 2) is granted in part and denied in part, as follows:

1. The motion to dismiss is granted to the extent that the plaintiff's action is dismissed without prejudice, but in all other respects the motion to dismiss is denied.

2. The alternative motion to stay the action and compel arbitration is denied as moot.

3. Final judgment shall be entered by separate document.


July 3, 2008.                                    BY THE COURT:

                                                 s/ *Richard G. Kopf*
                                                 United States District Judge

---

arbitrable."). One consequence of a dismissal rather than a stay is that the order is appealable. *See* ON Equity Sales Co. v. Pals, 528 F.3d 564, 568 (8th Cir. 2008) (absent district court certification under 28 U.S.C. § 1292(b), an interlocutory order directing arbitration and staying an action is not appealable, but district court's order directing the parties to arbitration and dismissing all claims is an appealable, final decision under 9 U.S.C. § 16(a)).